**FILED**

JAN 1 4 2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. S1-4:14-CR-00248-CDP |
| ) | |
| SYLVESTER CALDWELL, ) | |
| ) | |
| Defendant. ) | |

## SUPERSEDING INDICTMENT

### COUNT 1 – HOBBS ACT EXTORTION

The Grand Jury charges that:

1. At all times relevant to this Indictment, Defendant SYLVESTER CALDWELL (hereinafter "Defendant CALDWELL") was Mayor of the City of Pine Lawn, Missouri, which was and is located in St. Louis County, within the Eastern District of Missouri. The office of Mayor of the City of Pine Lawn was and is an elected office, and the Mayor serves as the chief executive officer representing the residents of the City of Pine Lawn.

2. At all times relevant to this Indictment, an individual, referred to herein as "John Doe 1," owned and operated a towing company which the City of Pine Lawn used as its primary towing service to tow vehicles operated by persons arrested by Pine Lawn police officers. Pine Lawn also used John Doe's towing company for other incidental services, such as jumps and towing police cars needing repairs.

3. At all times relevant to this Indictment, Defendant CALDWELL, in his official capacity as Mayor, was in charge of deciding which company would be the primary towing service for Pine Lawn. Defendant CALDWELL also had and exercised the power to choose a different company to provide towing service for Pine Lawn at any given time. Pine Lawn police officers

deferred to Defendant CALDWELL's authority when arranging for the towing of a vehicle in Pine Lawn.

4. At all times relevant to this Indictment, an individual, referred to herein as "John Doe 2," owned and operated a convenience store located in the City of Pine Lawn, Missouri, which offered various goods and products for sale to customers (hereinafter "the Convenience Store"). Another individual, referred to herein as "John Doe 3," was employed at the Convenience Store.

5. From in or before February 2013 through September, 2014, Defendant CALDWELL devised and executed a scheme to obtain money and property from local business owners by extortion, that is, Defendant caused local business owners to pay him money and to allow him to take goods from their businesses under color of official right and out of fear that they could suffer economic harm to their businesses if they did not pay Defendant.

### The Towing Company

6. During the time the scheme was in effect, Defendant CALDWELL corruptly requested and accepted various sums of money from John Doe 1 in exchange for continuing to direct the Pine Lawn Police Department to use John Doe 1's towing company as the primary towing service for towing vehicles of persons arrested by Pine Lawn police officers and for other incidental services. At times during the same period, Defendant CALDWELL, either directly or through other persons known and unknown to the Grand Jury, threatened to stop using John Doe 1's company to tow vehicles for Pine Lawn, and threatened to and did use a different towing company for such purposes.

7. On or about December 20, 2013, Defendant CALDWELL met with John Doe 1 on the parking lot of a Phillips 66 gas station located in the Eastern District of Missouri (the "Phillips 66 gas station"). Using coded language, Defendant CALDWELL directed John Doe 1 to pay Defendant CALDWELL an amount of money in cash, as follows:

**Defendant CALDWELL:** I want a cup of Mountain Dew, uh, full of foam, two times for the Rams *(Holds up two fingers)*. Altogether *(holds up four fingers)*.

**John Doe 1:** I don't have that. I got like three on me. Alright, you want a cup of Mountain Dew?

**Defendant CALDWELL:** Yeah, a cup of Mountain Dew, man.

**John Doe 1:** Alright, I'll be right back.

John Doe 1 then retrieved a bottle of Mountain Dew from inside the gas station and brought it back to Defendant CALDWELL. The conversation continued as follows:

**Defendant CALDWELL:** Hey, why didn't you, why didn't you put my Mountain Dew in a cup? I like my shit in a cup.

**John Doe 1:** Aw, come on. What's the difference?

**Defendant CALDWELL:** That's the way I like it, in a cup. Now go get me one and put it in a cup.

**John Doe 1:** You want ice in there, too?

**Defendant CALDWELL:** Nope.

**John Doe 1:** Just a cup?

**Defendant CALDWELL:** Yeah, I just like, I just like the green Mountain Dew in the cup.

**John Doe 1:** Okay.

John Doe 1 then entered the Phillips 66 gas station, placed $300 in cash inside a disposable cup, returned to the parking lot, and handed Defendant CALDWELL the disposable cup containing the $300 in cash. After the payment, John Doe 1 asked Defendant CALDWELL to talk to the Pine Lawn police officers so that John Doe 1 could get some towing work. Defendant CALDWELL agreed to do so. Prior to leaving the parking lot in his car, Defendant CALDWELL held up the cash-filled cup to John Doe 1 and stated "Mountain Dew, Monday," meaning Defendant CALDWELL was requesting another cash payment from John Doe 1 on a Monday.

8. On or about December 30, 2013, John Doe 1 met with Defendant CALDWELL at a laundromat located in the Eastern District of Missouri in order to make a cash payment. At the meeting, which occurred inside Defendant CALDWELL's car, John Doe 1 paid Defendant

CALDWELL cash in the amount of $200. During the meeting, John Doe 1 asked Defendant CALDWELL to put the Pine Lawn police officers to work, and Defendant CALDWELL responded that he did put them to work.

9. On or about January 15, 2014, Defendant CALDWELL made a phone call to John Doe 1 and told John Doe 1 that he wanted "Mountain Dew in a cup," meaning Defendant CALDWELL wanted another cash payment from John Doe 1. John Doe 1 agreed to meet Defendant CALDWELL the next day to make the payment. On or about January 16, 2014, John Doe 1 met with Defendant CALDWELL inside the Phillips 66 gas station. At the meeting, Defendant CALDWELL stated to John Doe 1 that he was "thirsty" and wanted "Mountain Dew in a cup." As directed, John Doe 1 retrieved a disposable cup, entered a bathroom, and placed $300 in cash inside the disposable cup. John Doe 1 then exited the bathroom and handed Defendant CALDWELL the disposable cup containing the $300 in cash.

10. From on or about February 17, 2014, through on or about February 18, 2014, these dates being inclusive, Defendant CALDWELL had a series of phone conversations with John Doe 1 in which Defendant CALDWELL made specific references to using a different towing company from John Doe 1's company. One such conversation was, in part, as follows:

**Defendant CALDWELL:** No . . . we're gonna use [the other company] for right now, until you, until you learn how to grow up.

**John Doe 1:** Let's go get something to eat so we can talk about it.

**Defendant CALDWELL:** Nope, nope, I don't need to eat. You ruined my appetite.

. . .

**Defendant CALDWELL:** . . . Hey, I might, I might have dinner with [the owner of the other company] myself.

**John Doe 1:** Well let's go get something to eat and we'll talk about it.

**Defendant CALDWELL:** Nope, nope, no. Ain't nothing to talk about, man.

**John Doe 1:** Well, where you at? I'll come and talk to you.

**Defendant CALDWELL:** Nope, you ain't gotta. Hey, I don't wanna be seen around you, 'cause you run your mouth.

Several days later, on or about February 21, 2014, Defendant CALDWELL arranged to meet John Doe 1 at a restaurant located in the Eastern District of Missouri. Inside the restaurant, Defendant CALDWELL showed John Doe 1 a written note directing John Doe 1 to pass $500 to Defendant CALDWELL under the table and to pay Defendant CALDWELL $300 at the end of each month. As directed, John Doe 1 handed Defendant CALDWELL $500 in cash under the table. Regarding the $300 payment, Defendant CALDWELL stated, "Starting next month."

11. On or about March 27, 2014, John Doe 1 met with Defendant CALDWELL at the Phillips 66 gas station in order to make a cash payment to Defendant CALDWELL. John Doe 1 entered Defendant CALDWELL's vehicle and made a cash payment to Defendant CALDWELL in the amount of $300.

12. From in or before December 2013, through and including April 11, 2014, within the Eastern District of Missouri,

### SYLVESTER CALDWELL,

the Defendant herein, knowingly and intentionally attempted to and did obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is, the Defendant attempted to and did obtain property not due the Defendant or his office, from John Doe 1, the owner of a towing company, with John Doe 1's consent, induced by wrongful use of fear and under color of official right, as described in the foregoing paragraphs.

In violation of Title 18, United States Code, Sections 1951 and 2.

## COUNT 2 – HOBBS ACT EXTORTION

The Grand Jury further charges that:

1. The allegations set forth in Paragraphs 1 through 5 of Count 1 of this Indictment are incorporated herein.

### The Convenience Store

2. During the time the scheme was in effect, Defendant CALDWELL, in his capacity as Mayor of the City of Pine Lawn, corruptly requested numerous payments of money from the Convenience Store through John Doe 2 and John Doe 3. Defendant CALDWELL attempted to disguise the payments as donations to the City of Pine Lawn, well knowing that the payments were not donations. John Doe 2 and John Doe 3 paid the requested funds to Defendant CALDWELL out of fear that Defendant CALDWELL would make trouble for the Convenience Store if they refused.

3. At times, John Doe 2 and John Doe 3 paid Defendant CALDWELL in cash. At other times, they paid Defendant CALDWELL by way of money order, including but not limited to the following payments:

| | |
|---|---|
| July 31, 2013 | $200 |
| November 23, 2013 | $300 |
| February 10, 2014 | $300 |
| June 11, 2014 | $200 |

The payments came from the funds of the Convenience Store. Neither Defendant CALDWELL, nor the City of Pine Lawn, nor any other person or entity was entitled to the payments.

4. From in or before February 2013, through in or around September 2014, within the Eastern District of Missouri,

### SYLVESTER CALDWELL,

the Defendant herein, knowingly and intentionally attempted to and did obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by

extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is, the Defendant attempted to and did obtain property not due the Defendant or his office, from John Doe 2, the owner of the Convenience Store, with John Doe 2's consent, induced by wrongful use of fear and under color of official right, as described in the foregoing paragraphs.

In violation of Title 18, United States Code, Sections 1951 and 2.

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney


_____
REGINALD L. HARRIS, Mo. #48939
Assistant United States Attorney