UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) No.  S1 - 4:14-CR-00248 CDP<br>SYLVESTER CALDWELL, )<br>)<br>Defendant. )<br>) | |

GOVERNMENT'S TRIAL BRIEF WITH MOTIONS IN LIMINE

COMES NOW the United States of America, by Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Reginald L. Harris and Anthony L. Franks, Assistant United States Attorneys for said District, and submits the following trial brief and motions in limine in connection with the trial of the above-styled matter.

INTRODUCTION & BACKGROUND

This brief is intended as a general guide for the Court.  It is not intended as a comprehensive statement of the Government's case, nor is it intended to be in the nature of a bill of particulars that would fix, bind, or in any way limit the Government to a set theory of proof.

I.   SUMMARY OF PROCEEDINGS TO DATE

On August 13, 2014, a Federal Grand Jury sitting in the Eastern District of Missouri returned an indictment charging Sylvester Caldwell with one count of Attempted Extortion in violation of Title 18, United States Code, Section 1951(a) ("the Hobbs Act").  On January 14, 2015, the Grand Jury returned a superseding indictment which charged the defendant with one count of Attempted Extortion and one count of Extortion, both counts in violation of the Hobbs

Act.  The defendant filed no pre-trial motions attacking the indictment or seeking to suppress any evidence.

II.     FACTUAL BACKGROUND

To aid the Court in understanding this matter, in the paragraphs that follow, the Government attempts to summarize some, but not all, of the evidence it expects to present at trial.

Defendant Sylvester Caldwell is charged with extortion and attempted extortion of local businesses located in Pine Lawn, Missouri from early 2013 through September 2014.  The defendant was Mayor of Pine Lawn during the time period charged in the indictment.  He was first elected Mayor in 2005 and won re-election in 2009 and in 2013.  Among other things, the defendant was in charge of deciding which company Pine Lawn used for towing services.

A.     Extortion of Towing Company Owner

In December 2013, Special Agents with the Federal Bureau of Investigation received information from a person referred to in the indictment as "John Doe 1," who was the owner of a towing company that did business with Pine Lawn.  John Doe 1 told agents that for several years he had been making monetary payments to the defendant in order to continue receiving towing business from Pine Lawn.  John Doe 1 told agents that the defendant requested payments from him on a regular basis.

John Doe 1 agreed to record phone conversations and face to face meetings with the defendant and, if the defendant requested money, to pay the defendant with funds provided by the FBI.  On December 20, 2013, John Doe 1 met the defendant on the parking lot of a gas station in Pine Lawn.  At the meeting, the defendant requested a payment from John Doe 1 using coded language, specifically "Mountain Dew in a cup."  John Doe 1 paid the defendant as

2

requested by placing $300 in cash, which had been provided by FBI agents, inside a disposable cup and handing it to the defendant. John Doe 1 then asked the defendant to make sure that the police work so that John Doe 1 can get some towing work. Before leaving the meeting, the defendant reminded John Doe 1 that he wanted more "Mountain Dew" on Monday. John Doe 1 recorded the meeting.

Over the course of the next several months, the defendant frequently spoke with John Doe 1 by telephone and in person. In some of those conversations and meetings, the defendant asked for payments from John Doe 1. On five different occasions, John Doe 1 paid the defendant, using FBI funds. The defendant recorded the payments or the conversations that occurred during the meetings in which the payments were made and also recorded the phone conversations. At times, the defendant threatened to, and did, use a different towing company.

At some point, the defendant became suspicious of John Doe 1. The defendant then proposed getting his payments from John Doe 1 through a third party. The defendant contacted an associate of both himself and John Doe 1 and told the associate that he (the defendant) was supposed to receive John Doe 1's $300 payment from the associate and that John Doe 1 would reimburse the associate. On or about February 28, 2014, the associate paid the defendant $300 as the defendant had requested.

The defendant was indicted for attempted extortion for the payments he obtained from John Doe 1. The case was sealed until the defendant's arrest. On September 25, 2014, the defendant was arrested on the indictment, and the case was unsealed the next day. FBI agents continued to investigate the defendant's activities as Mayor and learned that at least one other local business owner had been paying the defendant over the course of the past two years.

B.  Extortion of Convenience Store Owner

The individual referred to in the indictment as "John Doe 2" co-owned a convenience store located in the City of Pine Lawn. The individual referred to in the indictment as "John Doe 3" was an employee of the convenience store and is the brother of John Doe 2. In or before February 2013, the defendant began going to the convenience store and taking merchandise from the store without paying, including but not limited to bottles of alcohol and other items that were being offered for sale. John Doe 2 and John Doe 3 did not stop the defendant from taking the items because they feared that the defendant would make trouble for the business.

The defendant also began requesting payments of money from John Doe 2 and John Doe 3. They acquiesced in making the requested payments out of fear that the defendant would harm their business if they refused. On numerous occasions between early 2013 and September 2014, the defendant went to the convenience store and requested payments from John Doe 2 and John Doe 3. They usually paid by money order but also made some payments in cash. The payments were typically $200 or $300 and were made using funds from the convenience store.

## LEGAL MATTERS

In the following sections, the Government summarizes certain legal matters that may arise prior to or during the trial of this case. The Government addresses these matters now, in order to assist the Court and to identify possible issues to defense counsel prior to trial so that counsel may respond and the Court may rule. The Government does not, however, attempt to address every legal matter that may arise.

I.  ELEMENTS OF THE OFFENSE

The defendant is charged with violating 18 U.S.C. § 1951(a), which subjects to criminal

punishment anyone who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by . . . extortion or attempts or conspires so to do . . . ." 18 U.S.C. § 1951(a). "Extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of . . . fear, or under color of official right." Id. § 1951(b)(2).

To prove extortion, the Government must establish that (1) the defendant induced another to part with property, (2) the defendant voluntarily and intentionally did so by extortion—that is, through the wrongful use of fear or under color of official right, and (3) the defendant's action affected interstate commerce in some way or degree. See Eighth Circuit Manual of Model Criminal Jury Instructions ("Model Instructions") § 6.18.1951. The jury instruction defines "fear" as "a state of anxious concern, alarm or apprehension of harm. Fear includes fear of economic loss or injury . . . . Extortion by wrongful use of fear requires that the fear be reasonable under the circumstances." Id. The jury instruction defines extortion "under color of official right" as "the wrongful taking by a public officer of money or property not due him or his office, whether or not the taking was accompanied by force, threats or use of fear." Id. Thus, "if a public official voluntarily and intentionally misuses his public office and power for the wrongful purpose of inducing a victim to part with property," his conduct constitutes extortion. Id. Moreover, the Government is not required to prove that the defendant himself benefitted from the extortion. "Extortion is proven if the payments are made to a third party, or entity, at the direction of the defendant." Id. (Committee Comments).

    A.    <u>Inducement</u>

The first element calls for proof that the defendant induced another to part with property. However, when the theory of the charge is extortion "under color of official right," the

5

Government is not required to prove compulsion or duress. "[T]he coercive element is provided by the public office itself." Evans v. United States, 112 S. Ct. 1881, 1889 (1992). Thus, the Government only has to show that "a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." Id. As the Eighth Circuit has stated, "[i]t is not necessary that the public official induce or even initiate the payment." United States v. Kalb, 750 F.3d 1001, 1004 (8th Cir. 2014).

   B.   *Quid Pro Quo*

The offense of extortion "under color of official right" is completed "at the time when the public official receives a payment" in exchange for agreeing to perform official acts. In other words, "*fulfillment* of the *quid pro quo* is not an element of the offense." Evans, 112 S. Ct. at 1889 (emphasis added). Taking action toward the fulfillment of the *quid pro quo* also is not an element of the offense. United States v. Loftus, 992 F.2d 793, 797 (8th Cir. 1993). Moreover, the Government is not required to prove an explicit *quid pro quo*. Kalb, 750 F.3d at 1004 (rejecting requirement of proof of explicit *quid pro quo*); United States v. Ganim, 510 F.3d 134, 144-45 (2nd Cir. 2007) ("It is sufficient if the public official understands that he or she is expected as a result of the payment to exercise particular kinds of influence – i.e., on behalf of the payor – as specific opportunities arise."); United States v. Abbey, 560 F.3d 513, 518 (6th Cir. 2004) (the Hobbs Act does not require "some explicit, direct link with a promise to perform a particular, identifiable act when the illegal gift is given to the official.").

   C.   Attempt

Count 1 charges attempted extortion under the Hobbs Act. Thus, the Government must show that the defendant intended to induce another to part with property by extortion, that the defendant voluntarily and intentionally carried out some act which was a substantial step toward

the extortion, and that if the extortion had occurred, it would have affected interstate commerce. See Model Instructions §§ 6.18.1951 (Extortion) and 8.01 (Attempt).  The Eighth Circuit has held that "[t]he offense of attempted extortion is complete when the defendant has attempted to induce his victim to part with property." United States v. Foster, 443 F.3d 978, 985 (8th Cir. 2006) (citing United States v. Frazier, 560 F.2d 884, 887 (8th Cir. 1977)).  See also Kalb, 750 F.3d 1003-04 (defendant convicted of attempted extortion where she received payment of FBI funds from cooperator); United States v. Shoffner, 2014 WL 1494134, *3 (E.D. Ark. 2014) ("The one instance in which Stephens gave Shoffner $6,000 in funds provided by the FBI was charged as an attempted extortion in violation of the Hobbs Act.").

    D.    Interstate Commerce

"The plain language of the Hobbs Act proscribes extortion which 'in any way or degree obstructs, delays, or affects commerce.'" United States v. Rabbitt, 583 F.2d 1014, 1021 (8th Cir. 1978), *abrogated on other grounds by* McNally v. United States, 483 U.S. 350, 356 (1987), *superseded by statute*, 18 U.S.C. § 1346.  Only a minimal effect on interstate commerce is required to establish jurisdiction under the Hobbs Act. United States v. Dobbs, 449 F.3d 904, 912 (8th Cir. 2006) (robbery of "mom and pop" convenience store was a Hobbs Act violation despite *de minimus* connection to interstate commerce); United States v. Williams, 308 F.3d 833, 839 (8th Cir. 2002) (robbery of independent cab driver affected interstate commerce where cab transported people and packages to the airport, cab occasionally crossed state lines, and cab was in business for profit).  Beneficial effects on commerce resulting from the extortion are also proscribed under the Hobbs Act. Foster, 443 F.3d at 983.  An attempted extortion requires only a potential effect on interstate commerce. Id. at 984; United States v. Re, 401 F.3d 828, 835 (7th Cir. 2005), cert. denied, 126 S.Ct. 1652 (2006).

7

II.     RECORDINGS & TRANSCRIPTS

The Government will be introducing at trial recordings of consensual telephone conversations and in-person meetings between a cooperating witness and the defendant in this case.

   A.     Excerpt Calls/Recordings

The audibility of the consensual recordings is generally quite good, but they are voluminous in the number of criminal conversations they contain.  Consequently, excerpts of individual calls and meetings containing representative examples of the conversations will be offered; such excerpts and summary testimony about the same are appropriate.  Fed. R. Evid. 1006; United States v. Segines, 17 F.3d 847 (6th Cir. 1994); United States v. Denton, 556 F.2d 811, 815-16 (6th Cir. 1977) and cases cited therein.

   B.     Authenticity of Recordings

The Government will authenticate the recordings through the testimony of a participant in the conversations.  The Government may also have a FBI agent testify as to the authenticity of the recordings.  This is a proper procedure.  See United States v. Calderin-Rodriguez, 244 F.3d 977, 986-87 (8th Cir. 2001) (consensual recording can be authenticated even when it is introduced by an agent who was not a participant to the conversation).  United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975) and its progeny set forth a prima facie test to establish the authenticity of electronic surveillance.  See United States v. Henley, 766 F.3d 893, 912-13 (8th Cir. 2014) (analyzing McMillan factors).  The elements of this test are not rigid, but are applied with flexibility and common sense.  Id.; United States v. Webster, 84 F.3d 1056, 1064 (8th Cir. 1996); United States v. Roach, 28 F.3d 729, 733 (8th Cir. 1994).

C.     Use of Transcripts

The Government plans to introduce transcripts of all of the conversations played. In the Eighth Circuit, the decision to allow the use of transcripts to assist jurors in listening to a tape recording lies within the sound discretion of the district judge. United States v. Chavez-Alvarez, 594 F.3d 1062, 1069 (8th Cir. 2010); see also United States v. Placensia, 352 F.3d 1157, 1165 (8th Cir. 2003) (noting trial court's discretion to admit transcripts of foreign language transcripts even without tape recordings). Transcripts in the jury room will generally not be considered cumulative when they assist the jury in evaluating the evidence. Chavez-Alvarez, 594 F.3d at 1069.

The use of transcripts aids the jury in a number of ways. Among these are: (1) to help the jurors follow often poor-quality recordings -- United States v. Riascos, 944 F.2d 442, 443 (8th Cir. 1991); (2) to identify speakers -- United States v. Henneberry, 719 F.2d 941, 949 (8th Cir. 1983), cert. denied sub nom. Youngerman v. United States, 465 U.S. 1107 (1984); (3) to assist the jury when portions of the recording are inaudible -- United States v. Willis, 774 F.2d 258, 259 (8th Cir. 1985); and (4) to aid the jury in understanding colloquialisms in the conversation -- United States v. Delpit, 94 F.3d 1134, 1148 (8th Cir. 1996).

The trial court should allow the use of transcripts only after each party has had an opportunity to verify the accuracy of the recordings and provide their own transcript. United States v. Britton, 68 F.3d 262, 264 (8th Cir. 1995). Foundationally, the person who prepared the transcripts should testify that he has listened to the recordings and accurately transcribed their contents. United States v. Bentley, 706 F.2d 1498, 1507 (8th Cir. 1983); United States v. Frazier, 280 F.3d 835, 849 (8th Cir. 2002). However, the Eighth Circuit does not mandate that the foundation for the transcripts be laid by one who prepared the transcripts, but it may be

9

established by one who was a party to the conversations.  United States v. Gordon, 688 F.2d 42, 44 (8th Cir. 1982); Frazier, 280 F.3d at 849-50.

The Court, of course, must instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that "any discrepancies [from the transcript] should be resolved in favor of what they heard on the tapes." United States v. Scott, 243 F.3d 1103, 1107 (8th Cir. 2001).  However, once admitted into evidence and given the proper cautionary instruction, the transcripts may be used by the jury in their deliberations.  United States v. Foster, 815 F.2d 1200, 1203 (8th Cir. 1987); Chavez-Alvarez, 594 F.3d at 1069.

## MOTIONS IN LIMINE

I.    PRIOR CONVICTIONS

The United States intends to call two witnesses, referred to herein as "Witness 1" and "Witness 2," who have been previously convicted of crimes.  On September 30, 2014, in Will County, Illinois, Witness 1 pled guilty to possession of a firearm without a valid owner's identification card.  The maximum punishment for this offense, a class A misdemeanor in Illinois, is a sentence of less than one year in prison.  730 ILCS 5/5-4.5-55(a); 430 ILCS 65/14(e).  Witness 1 was sentenced to court supervision for 2 years and was ordered to pay a fine and court costs in the amount of $2,000.00.  In addition, in February 1994, Witness 1 was convicted in Missouri of misdemeanor assault in the third degree, a class C misdemeanor.  The maximum punishment for this offense is fifteen days per Missouri law.  Mo. Rev. Stat. § 565.070.3 and § 558.011.1(8).

Witness 2 was convicted of misdemeanor driving while intoxicated (DWI) in February

2007 in Missouri.  The maximum punishment for this offense, a class B misdemeanor, is six months.  Mo. Rev. Stat. § 558.011.1(6).

  A.  <u>Federal Rule of Evidence 609</u>

Under Rule 609(a) of the Federal Rules of Evidence, prior convictions may be used to attack a witness's character for truthfulness if: (1) the conviction is punishable by death or more than one year in prison, subject to Rule 403[1]; or 2) the elements of the crime required proving "a dishonest (act) or false statement, regardless of the punishment."  Fed. R. Evid. 609(a); <u>United States v. Stoltz</u>, 683 F.3d 934, 938-39 (8th Cir. 2012) (Rule 609(a)(2) refers to "crimes such as perjury ... false statement, criminal fraud, embezzlement, ... or any other offense in the nature of *crimen falsi*.").  Additionally, Rule 609(b) imposes an admissibility limitation on prior convictions that are at least ten years old.  Such convictions are admissible only if: 1) the probative value substantially outweighs its prejudicial affect; and 2) the proponent gives an adverse party written notice of the intent to use the conviction.  Fed. R. Evid. 609(b); <u>Stoltz</u>, 683 F.3d at 939.

  B.  <u>The Misdemeanor Convictions are Inadmissible for Impeachment Purposes Under Rule 609(a) of the Federal Rules of Evidence</u>**.**

In this case, Witness 1's misdemeanor third degree assault and firearm offense, and Witness 2's DWI conviction fall outside the scope of Rule 609 and thus should not be admitted for impeachment purposes.  Neither of these misdemeanor convictions is punishable by more than one year in prison as required by Rule 609(a)(1).  Additionally, Rule 609(a)(2) does not

---

[1] Rule 403 of the Federal Rules of Evidence states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

apply because none of the offenses include elements which require proving a dishonest or false statement.  430 ILCS 65/2(a); Mo. Rev. Stat. §§ 565.070.1 and 577.010.1; see also United States v. Nichols, 808 F.2d 660, 664 (8th Cir. 1987) (finding no error in district court's refusal to admit evidence of government witness's prior DWI conviction because the conviction did not "permit[] imprisonment greater than one year or involve[] dishonesty or false statement").

Furthermore, Witness 1's misdemeanor assault conviction should be excluded under Rule 609(b)'s admissibility limitation.  "Rule 609(b) effectively establishes a rebuttable presumption against the admissibility of prior convictions more than ten years old."  Stolz, 683 F.3d at 939-40 (internal quotations omitted).  "Such stale convictions should be admitted very rarely and only in exceptional circumstances."  Id. at 940; see also United States v. Singer, 660 F.2d 1295, 1300-01 (8th Cir. 1981).  No such exceptional circumstances are present in this case.  Here, Witness 1 was convicted in February 1994, over twenty years ago.  This stale misdemeanor conviction does not involve any elements of dishonesty or falsehood and offers little, if any, probative value on the question of Witness 1's character for truthfulness.  The admission of this prior conviction, however, would mislead the jury, confuse the issues, and otherwise unfairly prejudice the United States.  Therefore, Witness 1's prior misdemeanor conviction should be held inadmissible for impeachment purposes pursuant to Rule 609(b).

Accordingly, the United States respectfully requests that the Court exclude the use of evidence of the foregoing prior convictions pursuant to Federal Rule of Evidence 609 for the purpose of attacking the witnesses' character for truthfulness.

II.     SELECTIVE PROSECUTION

Based on statements made by the defendant at his initial appearance, the Government believes that the defendant may attempt to argue at trial that the Government has unfairly

targeted him for prosecution.  At his initial appearance, the defendant made one or more statements contending that the charges against him were "all political."  The Court should categorically foreclose the defendant from making such statements or arguments in any form during the trial of this case.

It is well settled that a defendant may not argue selective prosecution as a defense to the merits of a criminal charge.  "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  United States v. Armstrong, 517 U.S. 456, 463 (1996).  Selective prosecution is therefore an issue for the court to decide by pretrial motion, not an issue for the jury.  United States v. Clay, 618 F.3d 946, 955-56 (8th Cir. 2010); United States v. Jones, 52 F.3d 924, 927 (11th Cir. 1995).

For that reason, courts have excluded evidence and argument by defendants seeking to attack the prosecution's motive in initiating a criminal case.  In Clay, 618 F.3d at 955-56, the Eighth Circuit upheld the district court's decision not to allow the defendant to present evidence to the jury of the prosecutor's alleged animosity towards the defendant.  In United States v. Abboud, 438 F.3d 554, 562, 579-80 (6th Cir. 2006), the Sixth Circuit held that the district court properly precluded the defendants from alleging at trial that "they were targeted because of their Arab descent in the post-September 11 landscape."  Also, in United States v. Simpson, 226 Fed.Appx. 556, 562-63 (6th Cir. 2007), the Sixth Circuit agreed that the district court had correctly barred the defendants from questioning witnesses or making arguments based on a vindictive prosecution theory.  Other courts have reached similar conclusions.  See, e.g., United States v. Bryant, 5 F.3d 474, 476 (10th Cir. 1993) (upholding district court's restricting of cross examination of witness as to basis of federal rather than state prosecution); United States v.

13

Berrigan, 482 F.2d 171, 175, 177 (3rd Cir. 1973).

The Court should strictly limit any similar improper argument here. Such arguments and statements would be inflammatory, highly improper, and designed only to present the jury with a claim of selective prosecution. This Court should therefore prohibit them in their entirety and should caution defense counsel against making such arguments at any point during the trial – including during opening statements or closing arguments.

III.   JURY NULLIFICATION

The Government similarly requests that the Court preclude any attempts by the defense to encourage jury nullification. Although a jury has the power to engage in jury nullification, "this power of the jury is not a right of the defendants," and "it is not to be positively sanctioned by instructions [or arguments] . . . which would encourage a jury to acquit . . . regardless of the applicable law or proven facts." United States v. Sloan, 704 F. Supp. 880, 884 (N.D. Ind. 1989) (granting the government's motion *in limine* regarding jury nullification arguments) (citation and internal quotation marks omitted). Thus, just as courts should not instruct the jury that they may acquit a defendant even if he or she is guilty, United States v. Drefke, 707 F.2d 978, 982 (8th Cir. 1983); United States v. Avery, 717 F.2d 1020, 1027 (6th Cir. 1983), courts may prohibit the defense from arguing that the jury may engage in nullification. United States v. Brown, 548 F.2d 204, 210 (7th Cir. 1977); see also United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[A] trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification."). This Court should do likewise and preclude the defendant from eliciting testimony or presenting arguments that encourage jury nullification.

IV.     REFERENCES TO PENALTIES FACED BY DEFENDANT

The Government moves this Court to exclude any evidence or argument related to the potential penalties faced by the defendant if convicted.

The Eighth Circuit unequivocally has held that "[t]he penalty to be imposed upon a convicted defendant is generally not a matter for the jury." United States v. Briscoe, 574 F.2d 406, 408 (8th Cir.), cert. denied 439 U.S. 858 (1978).  The role of the jury is to decide guilt or innocence, not to determine punishment.  See Shannon v. United States, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quoting United States v. Rogers, 422 U.S. 35, 40 (1975)); United States v. Goodface, 835 F.2d 1233, 1237 (8th Cir. 1987) ("the jury's duty is to determine the guilt or innocence of the accused solely based on the evidence adduced at trial").  Thus, "sentencing procedures or details regarding a defendant's possible punishment are irrelevant to the issues that a federal jury must decide.  To inform a federal jury about a defendant's punishment would only introduce improper and confusing considerations before it." United States v. Thomas, 895 F.2d 1198, 1200 (8th Cir. 1990).  Mention of the potential penalties faced by the defendant would serve only the improper purpose of jury nullification.  See, e.g., United States v. Reagan, 694 F.2d 1075, 1080 (7th Cir. 1982) ("'The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.'") (quoting United States v. Greer, 620 F.2d 1383, 1384 (10th Cir. 1980)); United States v. Patterson, 1996 WL 54237, at *1 (N.D. Ill. Feb. 8, 1996) (prohibiting discussion of potential penalties in order to avoid possible jury nullification).

Proscribed mention of penalties should include not only specific references to years in jail, but also more veiled themes in potential defense arguments, such as arguments to the effect

15

that the defendant is "on trial for his life," that the defendant's "freedom" hangs on the outcome of the jury's decision, and that the defendant should not be separated from his family.  Each of these arguments invites the jury to consider the penal consequences of a conviction on a defendant and, therefore, is wholly improper.

Accordingly, the defendant should be precluded from in any way mentioning potential penalties.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Reginald L. Harris*
REGINALD L. HARRIS, Mo. #48939
ANTHONY L. FRANKS, Mo. #50217
Assistant United States Attorney
111 S. 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200

CERTIFICATE OF SERVICE

I hereby certify that on **March 20, 2015**, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon:

Travis Noble
Grant Boyd
SINDEL, SINDEL & NOBLE P.C.
8000 Maryland Avenue, Suite 350
Clayton, Missouri 63105

*/s/ Reginald L. Harris*
REGINALD L. HARRIS, Mo. #48939
Assistant United States Attorney